The Chancellor.
In April, 1840, Peter Farmer made a promissory note for two hundred and fifty dollars, payable to Samuel Hall, the plaintiff, or his order, on demand, with interest ; on the back of which note Newcomb, the defendant, endorsed his name in blank, at the request of Farmer, to enable him to get the money on the note. In November, 1841, Hall, without having demanded payment of the note from the maker, or given notice of non-payment to the endorser, brought a suit against the endorser alone, to recover the amount of the note and interest. And the question for our consideration is, whether a person who puts his name in blank upon the back of a negotiable note, which is drawn in such a form that he may be charged as endorser in the usual mode, if a demand is made and notice of non-payment given, can be charged as a general surety, without such demand and notice, by parol evidence merely. In the case of Prosser v. Luqueer, which was decided by this court in December last, I expressed the opinion that he could not. (See 4 Hill's Rep. 420.) The reporter misunderstood my opinion in that case, however, if he supposed I intended to intimate that I thought the holder of the note, which was recovered on there, could have maintained a joint action against the makers and the endorser of the note in a count charging *418 them all as joint and several makers of the note.(a) The joint-action was sustained against them, in that case, upon the common money counts, under the statute, as makers and endorsers, and the service of a copy of the note with the declaration. But as the endorser had waived notice of non-payment, and had. absolutely guarantied the payment of the money, for value received, I thought, upon the authority of the decisions there referred to, his guaranty was itself a several promissory note payable to the bearer of the note written by Edson and Arnold on the other side of the paper ;(b) not that he could be considered as having made a joint promise with them.
The courts have gone far enough in repealing the statute to prevent frauds and perjuries, by introducing parol evidence to charge a mere surety for the principal debtor, by showing that *419 his written agreement means something else than what upon its face it purports to mean. And I fully concur in the opinion expressed by Mr. Justice Bronson in Seabury v. Hungerford, (2 Hill’s Rep. 80,) that where a man writes his name in blank upon the back of a negptiable promissory note, he only agrees "that he will pay the note to the holder, on receiving due notice that the maker, upon demand made at the proper time, has neglected to pay it. Mere proof that he endorsed the paper to enable the maker to raise money on it, does not change the nature of his legal liability as endorser, where the note is in the hands of a bona fide holder for a good consideration. Such was the whole effect of the parol proof in this case. And for the courts to allow proof by parol to charge a mere -surety, beyond the legal effect of his written blank endorsement on such paper, would bring them in direct conflict with the provisions of the statute of frauds. (2 R. S. 135, § 2, sub. 2.)
Here there was no difficulty in charging Newcomb as endorser of the note, in favor of Hall, from whom it appears the maker intended to get the $250 to enable him to take up a former note.
It does not appear in this case whether the former note had been protested, so as to charge Newcomb as endorser, or not; or who was the holder of that note. All that appears is, that Newcomb knew that Hall would lend Farmer the $250 to enable him to take it up; and that Newcomb endorsed this note for Farmer, as a mere accommodation endorser, when the name of Hall, to whose order the note was made payable, was not endorsed thereon. Where a note is made payable to an individual or his order, and is endorsed by him in blank, and in that situation is presented to another person for his accommodation endorsement, who endorses it accordingly, the legal effect of his endorsement is to make him liable in the character of second endorser merely ; and he can in no event be made legally liable to the first endorser. And if the maker, or the first endorser, or any other person into, whose hands the note might subsequently come, should, without the consent of the second endorser, fill up the first endorsement specially, without recourse to such first endorser, so as to deprive the second endorser of his remedy over in *420 case he should be compelled to pay the note, it would be a gross fraud upon him, if not a forgery. But when such a note is presented to the accommodation endorser, and is endorsed by him without having been previously endorsed by the person to whose order the same is made payable, the latter may, at the time he puts his endorsement upon it, endorse it specially without recourse to himself; so as to leave the second endorser liable to any person into whose hands it may subsequently come for a good consideration, and without any remedy over against the first endorser. Or, if the object of the second endorser was to enable the drawer, as in this case, to obtain money from the payee of the note, upon the credit of such accommodation endorser, he may'endorse it in the same way without recourse; and by such endorsement may either make it payable to the second endorser, or to the bearer. And such original payee may then, as the legal holder and owner of the note, recover thereon against such second endorser, upon a declaration stating such special endorsement by him, and subsequent endorsement of the note to him by the second endorser. Or he may recover on the common money counts, under the statute, by serving a copy of the note, and of the endorsements so made thereon, with his declaration. But as the second endorser, if he has not waived notice of the demand of and non-payment by the maker, cannot be made liable upon his endorsement without proof of such demand and notice, the plaintiff at the trial must prove the same, or he cannot recover.
In the case of Herrick v. Carman, (12 Johns. Rep. 159,) the payees of the note, who had received it on the credit of Herrick, had themselves made a general endorsement of the note, instead of a restricted one; so that if Carman recovered against Herrick who had been duly charged as endorser, the original payees would be liable to him as first endorsers. And a recovery by Carman would, therefore, have rendered them liable, contrary to their agreement with him. And in Tillman v. Wheeler, (17 Johns. Rep. 326,) the payee of the note attempted to charge the endorser as upon a general guaranty, without having made him liable as endorser by a demand of the makers of the note, and *421 notice of its non-payment Both cases, therefore, were rightly decided. The remarks of the judges as to the right of the court to turn an endorsement into an absolute guaranty, upon a different state of facts, were uncalled for, and are therefore not entitled to the 'weight of judicial decisions in opposition to the provisions of the statute of frauds. The decision of the majority of the supreme court in the case of Nelson v. Dubois, (13 Johns. Rep. 175,) was clearly wrong. The note in that case being payable to Nelson or bearer, the defendant might have been charged as the endorser of the note without any endorsement by Nelson. For where a note payable to bearer is endorsed by another person generally, the person who thus puts his name upon it is liable as an endorser, and may be charged as such upon due notice to him of demand and non-payment of the note by the maker. (Hill v. Lewis, Skin. Rep, 410; Bank of England v. Newman, 1 Ld. Raym. Rep. 442; Eccles v. Ballard, 2 McCord’s Rep. 388; Brush v. The Administrators of Reeves, 3 Johns. Rep. 440.) It was improper therefore to allow parol evidence to enable the holder of the endorsement to turn a conditional liability, as endorser, which the plaintiff had lost the benefit of by his neglect to give notice of demand and non-payment, into an absolute contract to pay the note, in disregard of the provisions of the statute of frauds. In declaring specially-upon such an endorsement, the proper course is to set out the making of the rióte, the special endorsement thereof by the plaintiff to the defendant, where it is payable to order, or the delivery to him where it is payable to bearer or to the plaintiff or bearer; and -then to state the subsequent endorsement of the note by the defendant, by which he ordered and appointed the contents thereof to be paid to the plaintiff, and the demand of the maker of the note and notice of non-payment duly given to the defendant as such endorser. The erroneous decision of the majority of the jqdges of the supreme court in Nelson v. Dubois not having received the sanction of this court, and being in conflict with the statute of frauds, it is not too late to declare the law in conformity to the statute, as a majority of the judges of the present supreme court have done in this case. I conclude, therefore, *422 that the decision of the common pleas in this case was right, and that the judgment of the supreme court sustaining that decision was' not erroneous, and should be affirmed.
Senators Barlow and Wright delivered opinions in favor of affirming the judgment of the supreme court, concurring in the view taken of the case by the chancellor.
Bockee, Senator.
It appears very satisfactorily from the testimony in this cause, and the nature of the transaction, that the parties intended to give a note or security on which New-comb, as well as Farmer, should be liable to the plaintiff for the money to be advanced by him. They failed in effecting that object in the usual form of an endorsed promissory note, probably from mistake or ignorance of the proper form of negotiable instruments. In the form in which the note is presented to us, Newcomb cannot be treated as an endorser. An endorser is one who, by his signature, transfers the legal interest in the note. From such endorsement, whether the signature is on the back or the face of the note, result the liabilities and privileges of a commercial endorser. Newcomb had no such legal interest in the note, and could not make such an endorsement; because the note is payable to Hall, and is not endorsed by him, Newcomb can never be made liable to Hall as endorser. The payee of a note cannot maintain an action against the endorser. So it was' ruled in the case of Herrick v. Carman, (10 John. Rep. 224,) where the endorsee failed in maintaining an action against the second endorser, because it was proved that he was the mere agent of the payee and first endorser. Taking this note in the precise form in which it is, payable to Hall, with the signature of Newcomb on the back of it, and laying aside all the other testimony in the cause, it would be the case of Herrick v. Carman above cited, and Newcomb could not be made liable in any form. Had Newcomb put his name on a note designed for discount at a bank or otherwise, intending to be the second endorser, and knowing that his endorsement would be inoperative until the note was endorsed by the payee, *423 he would then be strictly within the rule applicable to a commercial endorsement, and entitled to its privileges. The evidence in this case, however, excludes such a supposition. It is véry clear that Newcomb put his name on the note, knowing that the money was to be obtained from Hall, the payee. The inference is very strong, at least a jury might think so, that Newcomb intended to be surety for the money so advanced by Hall to Farmer, and did not intend to make himself the endorser of a negotiable promissory note. The signature of Newcomb is a nullity, unless he is liable as guarantor, or on an original undertaking as surety, to pay the note. It is immaterial in which character he is made liable. Here we may safely rest upon the. principle laid down by the supreme court in the decisión of this cause, that such a construction should be given to the contract as will prevent its failure altogether. The maxim ut magis res valeat quam pereat, quoted by the learned judge, comes in aid of the plaintiff, and is decisive in his favor. It is suggested by the learned judge who delivered the opinion of the supreme court, and the decision appears to be mainly founded upon this suggestion, that the plaintiff, by endorsing the note, might have put it in a form in which it would be available to the holder against Newcomb as second endorser. True, he might have endorsed the note and sent it into the market, so that an innocent bona fide holder might have recovered against Newcomb as second endorser, but in such case Hall, as first endorser, would have been liable to Newcomb. The order of liability would be reversed. Hall would' become surety to Newcomb, instead of holding Newcomb as surety for Farmer.
It is said that Hall might have eridorsed the note without recourse, and then, although he was the payee and first endorser, might himself have recovered as the endorsee of Newcomb. This would be placing Hall in a position never intended by the contract. I think we must take this instrument and decide the rights of the parties under it in the precise shape and form in which it appears to us, without endorsement by the payee. Viewing this instrument as commercial paper, endorsed by Newcomb for the accommodation of the maker, I doubt the *424 right of the payee to negotiate it by a restricted endorsement, in which case it might operate as a fraud upon the person who puts his name upon the note with the view of being the second endorser. If the payee makes such endorsement, I think it would not avail. An endorsement is strictly and literally an order to pay money. Hall orders the money to be paid to New-comb, whose name already stands upon the note, we may presume, as second endorser. He writes over Newcomb’s signature an order to pay back the money to himself. By this little contrivance it is supposed that a right of action would accrue to Hall against Newcomb as endorser, when he had not before any such right of action. This sort of finesse and shuffling game is below the dignity of the law. We must take this contract as the parties left it, complete and perfected when the note was delivered to Hall, and we have no right to ask him to résort to practices bordering on trick and deception, for the purpose of changing the character and liability of the parties. If Mr. Hall could legally and properly pursue the course advised by some of our learned friends, I can see no reason why a restricted endorsement may not be written over the name of any prior endorser of accommodation paper, and so the person who has lent his signature on the faith of the responsibility of those who have preceded .him, may be utterly ruined, and that without remedy. I think that Judge Spencer, in the case of Herrick v. Carman, (12 John. Rep. 161,) states the law of this case correctly, and draws the proper distinction. Where a person endorses a note for the purpose of giving the maker credit with the payee, and with knowledge of the use to be made of the note, he is liable as on an original undertaking, and his endorsement may be turned into a guarantee. Otherwise, if he endorses the note without any such knowledge. It must then be presumed that he intended only to become a second endorser, with all the rights which pertain to that character. In the latter case he is not liable to the payee, nor to any person deriving title from him with knowledge of the circumstances attending the endorsement. This principle has, I think, been recognized and sanctioned by every analogous case to be found in the books *425 from 12 Johns, down to 5 Hill, and ought at this day to be considered as settled and established law, if in the conflict of decisions and diversity of opinion among judges any principles can be considered as settled and established. The case of Seabury v. Hungerford; (2 Hill. 80,) on the authority of which the decision of the supreme court mainly rests, is not an exception. The principle of that case is not adverse to the present plaintiff’s right to recover. The maker drew a note payable to Seabury or bearer, with a view of borrowing money from him, which note, before delivery, was endorsed by Hungerford; and it was held that Hungerford could not be charged as maker or guarantor, but only as endorser. Now two remarks may be made explanatory of the difference between that case and the present. It does not appear that Hungerford knew that the money was to be advanced by the payee, and it is not disputed that, on a mere naked endorsement of negotiable paper, unconnected with knowledge of the use to be made of it, the party could be charged only as endorser. It may be further remarked, that the note in that case was payable to Seabury or bearer^ and the observation of Judge Cowen would be apt and pertinent, that the payee might, by transferring the note, render it available to any holder against Hungerford as endorser. Not so in the present case, where, though words of negotiability are Used, they are entirely inoperative, and might as well have been left out of the instrument. The plaintiff could not have transferred the note without involving himself in responsibilities never intended, and entirely inconsistent with the contract between the parties. Then let the rule of Seabury v. Hungerford be applied to this case, and as there is no possibility of charging New-comb as endorser, consistently with the contract and intention of the parties; and as he knowingly undertook to be surety for Farmer to Hall in some form, he must be held liable either as guarantor or as an original promissor. He may be sued in either character.
Another' point made on the argument of this cause is, “ that the statute of frauds would bar a recovery against the defendant on any other ground than that of an endorser.” The case of *426 Leonard v. Vredenburg, (8 Johns. Rep. 29,) is exactly analogous to the present, and appears to settle the principle very conclusively in favor of the plaintiff. Here, as well as there, the undertaking was a part of the original transaction, and the defendant’s undertaking was the inducement to the creation of the debt. Parol testimony was admitted without objection on the trial, and was properly admitted to shew the attending circumstances, and the purpose and design for which the signature of the defendant was affixed to the instrument.
The nonsuit was improperly granted, and the judgment of the court of common pleas and of the supreme court are errone- ' ous, and should be reversed.
. Senators Porter and Putnam also delivered opinions in favor of reversing the judgment of the supreme court.
On the question being put, “Shall this judgment be reversed?” the- members of the court voted as follows:
For reversal: Senators Backus, Bockee, Johnson, Lester, Porter, Putnam, Rhoades and Varney—8.
For affirmance: The Chancellor and Senators Barlow, Bartlit, Burnham, Chamberlain, Denniston, Faulkner, Jones, Lawrence, Mitchell, Platt, Scott, Scovil, Smith, Strong, Works and Wright—17.
Judgment affirmed.(c)

а) The supreme court held in Prosser v. Luqueer, (1 Hill, 256,) that inasmuch as the promise of Prosser, the guarantor, was contemporaneous with that of Edson & Arnold, and was absolute, he might be treated as a joint and several maker with them; and in this aspect of the case the statute of 1832, (2 R. S. 274, §§ 6, 7, 2d ed.,) had obviously nothing to do with the question. When the case came before the court of errors, the chancellor expressly declined passing upon the view taken by the supreme court, observing: “ It is not necessary to enquire whether Arnold & Edson and Prosser could, at the common law, have been all sued, in one action, as joint makers of the note in question.” (4 Hill, 421.) The judgment of the supreme court was unanimously affirmed, but whether upon the ground taken by the chancellor, or the reasoning contained in the opinion of the supreme court, was left doubtful. And that part of the reporter’s note alluded to by the chancellor was not founded upon any thing he had said, hut upon the doctrine advanced by the supreme court in the same case, considered in connexion with the decision of the court of errors. The reporter believed, and still believes, that the ground upon which the supreme court decided was not overruled by the court of errors, at least not clearly so, and this he intended to intimate by the note referred to. For other cases in which the supreme court have laid down the same doctrine, see Manrow v. Durham, (3 Hill, 585, 589;) Miller v. Gaston, (2 id. 188;) Parks v. Brinkerhoff, (id. 663;) Hough v. Gray, (19 Wend. 202, 203;) and Dean v. Hall, (17 id. 214.)

 If Prosser be regarded as a maker of the same note signed by Edson & Arnold, it is difficult to see why his undertaking should be deemed several,t instead of joint and several. And regarding him as the maker of another note, distinct from that of Edson & Arnold, as the chancellor seems to have done, quere whether he was right in holding that the act of 1832 was applicable to the case. (See 2 R. S. 274, § 6, 2d ed.; Miller v. McCagg, 4 Hill, 34, 36, 7, per Bronson, J.; Miller v. Gaston, 2 id. 188.)

 This case was twice argued, once in 1843, and again in 1844. After the first argument the members of the court were equally divided upon the question, the vote being as follows:
For reversal: The President and Senators Bockee, Dixon, Franklin, Porter, Putnam, Rhoades, Sherwood and Varney—-9.
For affirmance: The Chancellor and Senators Bartlit, Denniston, Ely, Foster, Hopkins, Mitchell, Platt and Wright—9.
Re-argument ordered.